420-0268-WC consolidated with 420-0269-WC. Josephine Bowen, Appellant by Thomas Lichten v. Illinois Workers' Compensation Commission. William A. Meekamp, Truck Service, Appalee by Jim Kelly. Mr. Lichten, you may proceed. Thank you, Justice Holdridge. My name is Thomas R. Lichten and I represent the Plaintiff Appellant, Josephine Bowen. In this case, Your Honor, the Plaintiff Appellant is requesting that this court find that the Section 19L penalties that were affirmed by the Workers' Compensation Commission be restored, having been taken away by the Adams County Circuit Court because those 19L penalties were not against the manifest weight of the evidence. Counsel, can we ask you a threshold jurisdictional question? This case had come up once before. We vacated, sent it back down, and now it's up for a second round, correct? Correct, Your Honor. So, when the case went back and then came back up to the Circuit Court, apparently the Circuit Court provided an analysis regarding respondents' rights under Section 17 credit, but provided no specific disposition or ruling on the Commission's decision. Is that correct? I'm not sure. It dealt with that one issue? Pardon me? It just dealt with the one issue? It never specifically ruled on the Commission's decision, Circuit Court? Well, if I understand your question, the Circuit Court, the second time around, and it was a the respondent credit for 22.5% loss of the right leg. It was a previous settlement that the respondent was claiming credit for, thus basically zeroing out the 20% loss of the right leg that the arbitrator had awarded and which the Commission had affirmed. Right, but did it otherwise rule on the Circuit Court and the Commission's decision on the case itself? Or did it just issue a ruling on that issue? I think so, Your Honor, if I'm understanding your question correctly. So, it didn't otherwise affirm the Commission's decision? It just dealt with the credit? Well, there was another issue that this court had remanded it back to the which was the question of the failure to address the section 16 attorney's fee propriety of the Commission having deleted the section 16 attorney's fee. So, maybe I'm not totally understanding your question. Maybe I can refine it a little bit. Have you got a copy of the May 26, 2020 order? Yes. Take a look at paragraphs four and six. Okay, yes. I think the question that Justice Hudson has aimed at is where in this order does the circuit judge reverse the finding of the Commission? She says why it's wrong, but does she ever say it's reversed? I don't see that. I don't see that Judge Larson says that it was reversed. And so, now the question becomes she says what's wrong with it, but doesn't say doesn't come up with the judgment on it. So, the question is does that deprive the order of finality? She's got to say we're reversing the denial of the credit. I would say no. Thank you for pointing that out. I would say yes. I would agree because that would be consistent with the court's earlier dismissal of the earlier appeal because of lack of addressing these issues. And I would also point out for whatever it's worth that the previous decision or order of circuit court of Adams County by a different judge, Judge Drummond, although he never actually got around to making an actual decision, seemed, if you look at what he said, was very sympathetic with and agreeing with what the Commission and the arbitrator had done with regard to the award of the 20% loss of the right leg. Let me ask you a pointed question. Are you now agreeing that we may not have jurisdiction? Well, based on what you pointed out, it sort of seems that way, although I hadn't read the Judge Larson's decision that way, which I hate to do. But actually, he doesn't actually, he just makes some statements, but he doesn't actually order anything as far as the 2017 credit. Well, I don't know. He says NECAMP is entitled. He says NECAMP is entitled to a credit of 22.5% loss of the right leg. Well, the code specifies certain things that the circuit court can do. It can confirm the Commission's decision, set the decision aside if it's insufficient, set it aside, reverse it. There's a host of things that the statute allows the court to do, but it has to make a ruling on the underlying propriety of the Commission's decision. Just to say, well, I think this is wrong here, I'm going to give him the credit, leaves it hanging, leaves it subject to interpretation. I think that makes sense to me, although I didn't realize that when I read it. I would interject as well. It reads as though the court intended to set aside the decision, but then didn't memorialize it in any type of order or decision. That's how it reads. I would agree with that. My brief was based on the assumption that they had, that the circuit court had done that. I don't know, can I proceed with my argument in spite of this? Well, sense of the court, shall Mr. Lichten proceed? Might as well. You have the time. Yeah. All right. Well, thank you. On the penalties issue, I believe that this is a case where penalties is sometimes a sensitive topic, but I believe that this is a case where there's absolutely no question that the credible evidence, let alone the manifest weight, but the credible evidence is fully supportive of not only a 19L penalty award, but also the section 16 attorney's fee and section 19K penalties. The facts are very clear as to how the accident occurred because, well, Mr. Bowen was a truck driver. Every other day he drove a load of milled lumber from Quincy to Chicago, and then went over to New Process Steel in Elseville and picked up a load of steel. So on this particular day, April 14th, 2014, about 3.30 PM, he arrived at New Process Steel with several other of the NECAMP trucking drivers, checked in, he went, then was walking back to his truck, and as he was climbing up into the cab, and he describes specifically how he did it, first putting his left foot on one rung on the gas tank, and then his right foot, and then as he had his right foot on the rung and was pulling himself up into the cab, as he described it, his right knee exploded, and he said it was like a shotgun going off, and he was in severe pain, and it swelled quite noticeably. He called a co-driver, or one of the other drivers, I should say, because they weren't driving together, a gentleman by the name of Chris Bennett for help, so he could get into the restroom at the New Process Steel facility, and he also called Adam NECAMP, the owner of NECAMP trucking, and told him what had happened. Somehow, he managed to drive back to Quincy with his, after the load of steel had been loaded onto his truck, which was a flatbed truck, and when he got back to Quincy, it was about 3, a little bit before 3 in the morning, and he parked the truck in the trucking, NECAMP trucking lot, and called his wife to come and get him, and take him to the Blessing Hospital emergency room in Quincy, because he wasn't able to bear any weight on his right leg, and his wife came and picked him up, brought some crutches for him, and took him to the ER at Blessing, and then, if you read, and this is, I think it's very crucial in my opinion, the history of the injury recorded in the ER record, which I put into the, included in the appendix, it's a little difficult to read, because it's handwritten, but what it says is, when getting into his semi and bearing weight on his right leg, felt and heard a pop and had sudden onset of pain with inability to bear weight, and then there were some other words circled, severe, tenderness, swelling, sudden onset, still present, so my point being, you have a man, he's a truck driver, he's a high school graduate, he doesn't have any legal training, he doesn't have any education beyond high school, and when he gets back, and immediately after he gets back at 3 in the morning, and he gives this history to the ER nurse, it's incredible that there would be any way that he would have been able to, like, fabricate or have any reason, because he doesn't have any legal knowledge to change or fabricate anything that he said to the ER, and it's exactly the same as what he said he told to Mr. Bennett and Mr. Niekamp, and then, if you look at the after the April 15th, when he got to the ER at 3 in the morning, he gives the same exact history there to the physician's assistant to the orthopedic surgeon. Counsel, if I can interject, you're challenging the circuit court's paring down the award, so to speak, and also, obviously, setting aside the penalty, correct? Yes, that's correct, your honor. Well, what do you have to say about that? Well, I think that the question is whether the evidence, the testimony of Mr. Bennett and Mr. Niekamp could be considered credible, and I don't think there's any way it can be considered credible if you look at what I was just describing in medical records. I just don't think that the commission, and of course, the commission didn't take away the 19L penalty, which, as we all know, is in the nature of a late fee, versus the 19K penalty, which is, and Section 16 attorney's fees, which is appropriate where there's evidence of bad faith or improper motive. I just don't think that there's any possible way that anybody looking at not only Mr. Bowen's testimony, but looking at what he said when he got to the ER at three in the morning, which was right after he had gotten injured. I don't think that any rational person could say that the two respondents' witnesses were testifying truthfully or that what they said would make any sense compared to what's in the medical records. I think that's inescapable to my mind. Mr. Lichten, before your time is totally up, can you at least address the question of who has the burden of proving a credit? Yes, thank you, Justice Hoffman. I think that the burden is on the respondent or the defendant appellee, and I cited the Dorsey case, but actually my opponent cited the Dorsey case also, which was a case that was actually, I believe, written by Justice Holdridge, where the statement in the record was, that is in the decision, was that the record established that there was credit, the respondent was entitled to credit for 30% of an arm. So I'm assuming since that was a statement by the court, that that was placed into the record. So I do think it's the respondent's burden. And further, I would point out that I think it's the commission, the commission does have discretion in determining how that, if there is to be a credit, how that is to be determined. And one of the things I wanted to point out, which may or may not be of great interest, is at the time in 1997, or the earlier injury was in 1997, whenever he got the Pro Se settlement, which was a few years after that, a leg was worth 200 weeks. Mr. Lichten, your time is up and you will have time in reply. Is that a sufficient answer, Justice Hoffman? Yeah, I'll pursue it when he gets his additional time on reply. Oh, okay. Okay. Thank you. Mr. Kelly, you may respond. Thank you, Justice. There are two issues that I want to address. Initially, I, you know, on the issue of arising out of the employment accident issue, that's... So before you get to that, what is your position on the serious jurisdictional question? I think that the court's order, with regard to paragraph, I think it was reference three and four, three, I think the court... Four and six. Four and six. Sorry, Justice Hoffman. The reason I was going to reference three is because the court does in paragraph three talk about reversing the prior order. So I was just going to use that as evidence of intent of what the court was trying to do. I think on the issue of penalties, with regard to L in paragraph three, that that issue would be properly before you from a jurisdictional standpoint. On the issue... Hold on, hold on, hold on. It's an all or nothing at all issue. It's not piece by piece. We don't handle appeals issue by issue. We handle appeals if the order of the circuit court is a final order. And that means disposing of all the issues. And I agree with that. And I appreciate that, Justice Hoffman. What I was going to do is then go to paragraph four and say, he refers back to the prior opinion. And I was trying to cross reference with that. And it talks a lot in the prior opinion about the commission taking judicial notice of their records. And so to me, if it's simply an issue of was there documentation for the credit, I feel like you have jurisdiction to decide that. And so... No, I think the question is, did this circuit judge ever say that the denial of credit is reversed? I don't think that language is in this order. Well, I mean, don't you think it should be? I think that that would make this order much stronger and would answer the question directly. I think that reading that paragraph four and paragraph six, if you don't have that language, everything else I think is there. I think it essentially reverses what the commission said. The commission said 20% of a leg, and that's not on appeal. And the commission said, we can't find evidence to document a credit and it would be speculative. And that's why I referred back to the April 22nd opinion that's referenced there. It talks all about the commission taking judicial notice of their own records. And when you look at the commission's own records, it's clearly there's evidence there of the prior credit. So I think in essence, paragraph four does reverse what the commission has said in their order of the language. It says that there's not enough evidence there to document a credit. So you're basically saying it's reversal by implication. Is that what you're saying? Correct, Justice Hudson, I am. Is that a sufficient basis for us to have jurisdiction? Well, I agree the language of reversal is not in that paragraph. So I'm not going to disagree with that at all. I guess I'm saying the fact that the commission's statement, and I think the commission, there's some problems with the commission's order, the way it talks about doesn't explicitly do some things too. But I do think that the language in paragraph four specifically reverses the finding by the commission that says we can't find evidence to document a credit. And the court, as I said, referencing back to their April 22nd order goes into the concept that the commission can take judicial notice of their own records. And this, if you look at that, that credit is clearly documented. Let me share counsel my view of it based upon what I reviewed. And you argued this earlier, that the intent was clear by the commission. And this was obvious in the question I asked earlier of opposing counsel. And that is, I agree the intent is there. But where can you point to the finding, the finding the court made to make this an all wholly appealable order to where the And I think, I think, Justice Kavanaugh, when you go back to the 422 2019 order that is referenced and all the arguments back at that point, what we were trying to do to the judge for the judges to say, back when we were at the proposed decision stage in front of the arbitrator, we actually put in our proposed decision. Your website says 22 and a half circuit court judge in April 22nd 19 opinion, please put that in the record and reference it. We started back at that point. Then we filed a 19 F and said, commissioner, uh, well, first we appealed it and argued it. Then we filed a 19 F, uh, at both of those stages in front of the commission, we pointed out to them the credit on their website that showed it clearly. And we pointed out, uh, the facts and the opinion. So the council council, your opponent's going to turn around and say, uh, an eight F petition is a little bit late to be furnishing evidence. The, the decision was already out. It's not a clerical error. Well, the reason I'm going all the way back to the arbitrator, even though we're to be addressing the commission's decision is that I've been trying since the day we tried this case and there's in the record, forget about the, that new evidence on their database, even though the commissioner says they can take judicial notice for their own records, but I can't find it. We could find it and point it out. So I think that's why I raised that that's relevant, but in the record and the arbitration in the record, it's not new evidence. This gentleman admitted in 1997, he had an accident with OTR. He admitted that he injured his right knee. He admitted that he had a settlement. He admitted that it was approximately $10,000, which it is. He admitted that on direct questioning for me, sir, that settlement that you had for that case was a 22 and a half of a, of a leg, sir. What was that percentage? I said 22 and a half and a leg. He said, yes, sir. He admitted he went to the Adams County courthouse and received the settlement. All of that is in the record in the arbitration transcript. That has been the evidence throughout. So when the commissioner is saying that it's speculative to find a credit, it just does not, it defies the record. So, so, so Mr. Kelly, I don't know if this helps and I can't speak for the full court, but you've been fighting this fight all along and you've teed it up for the court to put that fine in there and the findings not there. No one's I I'm certainly not attributing blame on council. Uh, the findings should be there. I appreciate that justice. I guess I, I was trying to, uh, address the concept of new evidence being brought in. Uh, I was just trying to point out that this evidence has been there from day one and addressing specifically the finding by the commission that it's speculative and there's not documentation there without, without any other, I raised the issue is an eight F is for a clerical error. If the commission makes a mistake as to the evidence, that's not a clerical error. Just as I, I, you can't supply evidence under an eight F that goes to the merits of an issue. I understood, understood that, but put yourself in council's position and try to, how do we get this issue corrected? We put it in the decision for the arbitrator is how you get it corrected. And we did. Yes, we did justice. We did that. So I guess we were trying to try anything we could to, uh, get this matter before the court and, and the, and get it corrected. Uh, that would be my answer to that. Um, I think that, um, on the issue of the, the credit, you know, if it, if it has to go back, I mean, to be corrected, uh, or if there's no jurisdiction, I think it should be an easy fix based on what is in the record. Um, and I, the question is the propriety of the commission's ruling on the credit will, will rise or fall based upon what was in the record prior to the submissions with the eight F what was in the record when this case was tried, it entitles you to a credit or it doesn't. And either the commission's denial was against the manifest weight or it wasn't. But my only point is you got to be careful on these eight F's. These are for clerical mistakes only, you know, calculated an average weekly wage and it was math. Yeah. I understood. And maybe it was just a creative way to try to, I mean, the motion was titled motion to recall, correct, and reissue for clerical error in the commission's decision, trying to be creative, to try to get something streamlined and get adjusted. But your point about what was in the record and to adjust, to address the justice's question earlier about the standard, there's no burden on the employer. The statute mandates it's a shell and the evidence is in the record to establish a credit. Hold on. If it isn't the employer's burden to prove the entitlement to the credit, are you suggesting it's the respondents burden to prove no credit? I mean, how does he prove the negatives? All, all I'm suggesting is the rec, the evidence in the record was established and the case law says all that needs to be there is prior payment of the award for the leg. Somebody's got to prove that there's a prior payment. Well, I think if, if one, if somebody stood up and said to the commission or the arbitrator at the start of the hearing, would you take judicial notice of your records? The commission could say sure. And that would be, and so there's no dispute that they could take judicial notice of their records, but that presupposes that there's a record there. So in other words, you've got an respondent to establish number one, there was a prior injury. There was a prior settlement. There was same body part. And you know, you get into the record, what the percentages were, if you want, and then ask the arbitrator to take judicial notice of this settlement contract or this decision of the commission. And we did all the, we did all the things, Justice, that you just asked for. Every, every single thing was done at arbitration. And we went, we, we elicited the injury. We elicited OTR as the employer. We elicited the exact percentage. I'm not disputing that you did it. I'm getting to the question of who's the burden party. And it has to be the employer. And my position is why I raised that the, the arbitrator could take judicial notice or the arbitrator could do it on his own. I don't think the burden is on the employer. I think the burden, according to the statute in the legislature is on the commission to apply the credit. And so I don't, it's not the employer's burden. If the, if however, the information gets raised to the arbitrator, they, the commission has the duty to apply that credit. It's a shell. No, I mean, is it your contention that in every workers' compensation case that's filed, the commission is under a legal burden to search its records to find out if that complainant, that claimant has ever filed a prior workers' compensation case for the same body part. Is that your argument? No, that's not my argument, but my argument is if that's an issue in the case, which it was raised as an issue in this case, the onus is on the commission to apply that credit. That's what my position is. Once there's evidence of a credit, I think you're right. It becomes the burden of the commission to apply it, but there has to be evidence of the credit and somebody has to Well, in this particular case, I understand what you're saying. And the petitioner also on direct examination also offered that information. And so I think there's an example of where if I'm the arbitrator sitting there and the petitioner, like he did say, I suffered a prior injury to this leg. The arbitrator could speak up and say, Mr. Licton, you elicited from your client. He worked for OTR and OTR, and he had a prior settlement. I'm finding that there's a credit there. I think that could have been a possibility or a possibility in this particular case. I don't think the legislature read in a burden to the employer and there's no case law that reads in a burden to the employer. So I just wanted to answer that question directly. I think that all that's required is to show that there was payment made and that was done in this case. And then it's up to the commission at that point to apply the credit. If I could briefly, uh, before I run out of time, uh, on the issue of penalties, the manifest weight, the evidence that would apply to the commission's finding that responded, acted reasonably in good faith also applies to the fact that 19 K and section 16 fees not being there are supported by the record. Then that gets us, uh, down to just was the law applied right to the L penalties. And if the reasonableness standard is the standard and the commission found it's not against the manifest weight that responded, acted reasonably 19 L penalties have to go away. And the facts relevant to that are all of the things that we cited in our brief petitioner petitioner's testimony. He admitted to problems with his knee before the accident. He admitted to arthritis before the accident. He admitted to limited range of motion before the action. He admitted to not being able to extend his knee before the accident. He admitted to longstanding problems with his knee before the accident, not being able to extend it. He admitted not being to climb stairs, difficult to getting out of his car. He already had crutches. His wife brought crutches to him when he came back. Uh, he, we have an independent witness without a bias. The first call he made says he said it buckled walking across the smooth pavement petitioner admitted to buckling prior to the accident. Respondent has an IME where the doctor says longstanding author Austria arthritis that leads to buckling walking. Uh, we have Mr Kelly, your red lights on your time is up. Thank you. Thank you. Thank you. Justices. I appreciate it. Uh, Mr. Licton, you may reply. Thank you, Justice Holdridge. With regard to the, um, the burden issue, uh, the, when we tried this case, uh, that morning, uh, Mr. Kelly gave me his exhibits and, uh, he said, there's one in here. There's a thing in here where it shows a prior, uh, settlement or, or something to that effect. And I looked through what he gave me and I said, well, it's not in here. I don't see it. It's not here. Uh, so I didn't know if he left it out of what he gave me or, or what, cause I didn't have he was going to be putting into evidence, but when it came up, uh, the petitioner on, I guess you might say redirect said, well, I know I got a check for $10,000 about 30 days after I came in here those years back, uh, whether it was 20%, 22 and a half percent, I don't really know about that. Um, and then arbitrator Lee, uh, talking about it with arbitrator Lee on the Mr. Kelly, uh, Mr. Kelly, I'm inclined to go by whatever the records show. Uh, well, apparently, uh, Mr. Kelly also didn't put this document in his exhibit. So what the, what arbitrator Lee did, which I thought was very common sense kind of thing, he says, well, I think this man has got 20% additional impairment to his right leg beyond whatever he might've been, uh, uh, given or, or settled for when he was pro se, uh, previously. And, uh, actually judge Drummond and the first judge who ruled on this, he said, that makes a lot of sense to me. And it made a lot of sense to me too, because previously there was just a removal of a loose body. He didn't really have, um, any, any at that time back in 1997, he didn't have any arthritis or any, or any meniscal problems or anything like that. And he didn't have any treatment for like 14, 15, 16 years after that for his knee. So, and then I also think that, uh, uh, my opponents being a little disingenuous because he didn't claim that it wasn't his burden. He assumed that it was his burden, uh, as you correctly point out, I believe justice Hoffman to establish that credit. And, uh, as I said, when we were arguing this before, uh, uh, commissioner or that time, uh, commissioner Brennan, uh, I said, well, this is like, this reminds me of, we were arguing on Groundhog day. I said, this reminds me of the movie Groundhog day, because this 19 F is an attempt to get something into evidence. They want to basically retry the case and add in, add in additional evidence. They even wanted their consideration of their proposed decision that they said they'd submitted to arbitrator Lee. Uh, and you just can't do it. They didn't put it into evidence. They had plenty of opportunity to do it. I pointed out that it wasn't in the, uh, exhibit, uh, Mr. Kelly certainly could have put it in if he had it, or I don't know what happened, but in any event, he didn't. And it was certainly pointed out by me and, and by the arbitrator. And now they're making a different argument, which I think they've waived, where they're trying to now argue, well, it's not our burden. It's the commission's burden, which I don't think that's the law. And then also, uh, you have this additional issue now, uh, which I don't know if it's come up before, but where the law has changed and there's a uh, it only was 200 weeks. Now it's 215 weeks value for a leg. So I think if you, the statute, I think gives the commission discretion to decide how to interpret all of this. And I don't think that what they did was incorrect, uh, either as a matter of law or, uh, as a matter of the, uh, of the evidence. Uh, and I certainly take issue with a number of the things that Mr. Kelly just said, uh, Mr. Bowen was not having any problems to speak of with his, with his knees. Although he did by the time, I mean, his man is six foot three, 330 pounds. Uh, he was 46 years old when this, when this injury happened, uh, by that time, he did have a lot of arthritis in both of his knees and he did have some problems, but he didn't have any torn, uh, menisci, uh, and this was a definite major change. And certainly he was, uh, much more damaged after this happened than, than before. So, uh, I think that that's what the committee, what, what arbitrarily did and what the commission did. Mr. Lichten, your time is up. Red light is on. Uh, so okay. Thank you counsel both for your arguments in this matter this morning. We'll be taking under advisement a written dispositional issue.